O'Connor v. Tyrrell.

Lawrence O'Connor

v.

Peter Tyrrell et al.

1. A contract for the sale of land contained this provision: " Said party of the second part [O'Connor] shall have possession of said premises on the 14th day of May, 1894, and in the event of the failure of said parties of the first part to deliver the deed at the time and in the manner hereinafter referred to, the said parties of the first part hereby agree to repay to said party of the second part the said sum of $250, heretofore paid as part of the consideration money, and in addition thereto, such sum, not exceeding $1,250, as said party of the second part shall have paid upon the examination or guarantee of the title to said premises, or in the repair, improvement or furnishing of the building or ground, or the survey thereof, or shall have in any way incurred or expended in the preparation for the purchase of and taking of title to said premises, not exceeding the said sum of $1,250, such payment to be accepted by said party of the second part as liquidated damages for any breach of this agreement by the said parties of the first part; and in event of the failure of said parties of the first part so to deliver said deed at the time herein stated, said party of the second part hereby agrees to surrender possession of said premises within fifteen days from June 26th, 1894, to James Tyrrell, one of said parties of the first part hereto. And said party of the second part shall not, under any circumstances, be held to be liable for any rental for the occupancy of said premises."

2. The parties of the first part arbitrarily refused to deliver the deed.—*Held*, that the repayment, stipulated as liquidated damages, was not provided for the case of such a breach of the contract, but for failure after *bona fide* effort to make title to the purchaser; hence, in the absence of the appearance of such failure, that the question whether equity will specifically enforce the performance of a contract in which liquidated damages are agreed upon for its breach, does not arise.

On motion to dismiss bill.

*Mr. Charles L. Corbin*, for the motion.

*Mr. John Garrick, contra.*

The Chancellor.

The motion is made in virtue of the two hundred and thirteenth rule, and takes the place of a demurrer to the bill.

O'Connor *v.* Tyrrell.

The case presented by the bill is this: James Tyrrell, for himself and as attorney in fact for others who are co-tenants with him of certain land in the city of Bayonne, on the 20th of April, 1894, agreed to sell that land to the complainant for $7,250, of which $250 were to be paid upon the execution of the agreement of sale and the balance was to be paid upon the delivery of the deed on the 21st of the following May, $5,000 in cash and the remainder by assumption of the payment of a mortgage of $2,000, by which the property was encumbered. Upon examination of the title, it was discovered that the power of attorney under which James Tyrrell assumed to act for his co-tenants, who lived in Ireland, though duly executed, was defectively acknowledged by some of the co-tenants. Therefore, it was agreed that, instead of having the power of attorney re-acknowledged, the deed should be directly executed by all owners of the property and be sent to Ireland for that purpose. As more time would be required in such execution than the terms of the contract of sale would admit of, a new agreement was entered into on the 8th of May, by which the former contract was annulled, and the 26th of June was fixed for the delivery of the deed and the full consummation of the transaction. The latter agreement contains this stipulation:

"Said party of the second part [O'Connor] shall have possession of said premises on the 14th day of May, 1894, and in the event of the failure of said parties of the first part to deliver the deed at the time and in the manner hereinafter referred to, the said parties of the first part hereby agree to repay to said party of the second part the said sum of $250, heretofore paid as part of the consideration money, and in addition thereto, such sum, not exceeding $1,250, as said party of the second part shall have paid upon the examination or guarantee of the title to said premises, or in the repair, improvement or furnishing of the building or ground, or the survey thereof, or shall have in any way incurred or expended in the preparation for the purchase of and taking of title to said premises, not exceeding the said sum of $1,250, such payment to be accepted by said party of the second part as liquidated damages for any breach of this agreement by the said parties of the first part, and in event of the failure of said parties of the first part so to deliver said deed at the time herein stated, said party of the second part hereby agrees to surrender possession of said premises within fifteen days from June 26th, 1894, to James Tyrrell, one of said parties of the first part hereto. And said party of the second part shall not, under any circumstances, be held to be liable for any rental for the occupancy of said premises."

In pursuance of this agreement, the complainant paid $250 in cash, broke up his home in the city of New York and moved to the premises contracted to be conveyed to him, upon which he made repairs which have cost him nearly $2,000.

On the 26th of June, 1894, he duly tendered the $5,000 he was then to pay, and demanded a deed in accordance with the terms of the agreement, to which tender and demand James Tyrrell replied that, as attorney in fact, he was unable to deliver the deed, and that he desired a statement of the complainant's expenditures, contemplated by the clause of the contract which has been quoted, in order to ascertain and pay the sum agreed upon as liquidated damages, and also that he desired to fix a day, within the terms of the contract, upon which the complainant would surrender to him possession of the land.

The only question presented in the argument was, whether this court will compel a conveyance to the complainant, notwithstanding the provision for the payment of liquidated damages upon the breach of the contract, the contention in behalf of the defendants being that, by the agreement, the parties have expressly stipulated the measure of the damages which will result from the defendants' non-performance of the agreement, and therefore equity will leave the complainant to the recovery of those damages, on the ground that an appeal to equity is unnecessary since the legal relief, by agreement, has been rendered adequate.

For the breach of contracts the common law gives a single remedy. It requires the wrongdoer to pay a sum of money as compensation. When the contract broken is an obligation to pay money that remedy amounts to specific performance. But there are many contracts for the breach of which such a remedy is inadequate, and that inadequacy has given rise to the jurisdiction of chancery to enforce specific performance of contracts, requiring the performance or omission of the very acts agreed upon. The remedy is thus made identical with the right withheld, and the defendant is thereby deprived of the option, which the legal remedy practically gives him, to disregard the actual obligation by which he is bound and pay a sum of money in the

place thereof. *Pom. Spec. Perf.* § *3.* The inadequacy of the legal remedy, by compensation in damages, is generally regarded as conspicuous in cases of agreements for the sale and purchase of real estate, each parcel of which differs in some respects from others. Such property is usually bought because it possesses some feature which attracts by personal gratification and determines the purchaser to make some particular use of it. The present case is not an exception to this usual condition. The description of the property discloses its boundary upon the shore of the Newark bay, with its expanse of water, and the occupancy of it by the complainant indicates that he has determined to make it his residence, and his expenditures upon it give evidence of his appreciation of its situation and surroundings. It is thus made plain that compensation in damages will not be the full measure of relief which a breach of the contract by the defendants, in justice, demands.

This situation primarily leads to a critical examination of the contract, and the meaning of its clause which I have quoted, to ascertain the correctness of the defendants' assumption that a stipulated sum has been fixed as damages to be had for the mere non-performance of the contract by the defendants.

That which was contracted for was the purchase and sale of land—a portion of the purchase-money was to be paid at once, and the purchaser was to go into possession pending the execution and delivery of the deed, when the remainder of the purchase-money was to be paid. It was in contemplation that he would proceed to repair, improve and furnish the property. In the event of the defendants' failure to deliver the deed, he was to surrender the possession of the land to their agent, receive back the purchase-money paid, together with his expenditures, not exceeding $1,250. That repayment and surrender were expressly made dependent upon the failure of the defendants to deliver the deed. In this arrangement, which contemplated repayment upon the happening of the one event, failure to deliver the deed, was interpolated the parenthetical clause, that such repayment was to be accepted by the complainant as liquidated damages for " *any breach* " of the contract by the defendants.

O'Connor *v.* Tyrrell.

As the repayment was limited to a single event, and made payable upon the happening of that event only, the words "any breach," in the parenthetical clause, could not have a broader significance than failure to deliver the deed, for the complainant was bound to accept the repayment only in that event.

It is to be noted that upon the defendants' failure to deliver the deed, the complainant is to have merely pecuniary reimbursement and not compensatory damages. He is to have nothing for his disappointment, trouble and discomfort. The inference from a submission to such inadequate damages is, I think, that a stronger meaning was intended to be given to the word "*failure*" than mere arbitrary refusal of the defendants to deliver the deed.

"*Failure*" is the result of action which predicates earnest ·effort, and not mere inaction and refusal to do. It is in this .sense, I think, that the word was used in this contract. It demanded from the defendants a *bona fide* effort to deliver the ·complainant a deed which would vest in him the title to the property. It was failure after such effort that was to constitute the breach for which reimbursement was to be accepted as .satisfaction.

It is obvious that the contract was not an alternative one, to ·convey *or* pay damages. Damages were to be paid upon a ·"breach" of the contract, which primarily required an honest effort to perform and failure, and do not become a factor in the consideration of remedies until that precedent condition. is performed.

The professed inability of James Tyrrell to deliver the deed required, does not prove the inability of him and his co-tenants to carry out the contract upon their part.

The case presented, then, is this: A certain sum is agreed ·upon as satisfaction to the complainant, if *bona fide* effort to make him title, fails. So far as it appears by the bill, the defendants can make that title, and the aid of this court is invoked to compel them to do so.

I think that, as the facts now. appear, the complainant· is ·clearly entitled to a decree, and that the case is not .brought

within the controversy referred to in *Crane* v. *Peer, 16 Stew. Eq. 557*, or affected by the intimation of Chancellor Halsted in *St. Mary's Church* v. *Stockton, 4 Halst. Ch. 520*, as the defendants' proposition suggests.

The motion will be denied, with costs.